### *NOT FOR PUBLICATION*[1]

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re<br><br>**JLJ FARMS, LLC**,<br><br>Debtors. | Case No. 20-00713-BPH<br>Chapter 12 |
| **LAURIEANN SHOEMAKER**, an individual, and **JOSEPH E. BEUMELER**, an individual**,**<br><br>Plaintiffs,<br><br>-vs-<br><br>**THE HONORABLE NOAH G. HILLEN**, an individual, **ZIONS BANCORPORATION, N.A., F/K/A ZB, N.A., D/B/A ZIONS FIRST NATIONAL BANK**, a National Banking Association; **SAG INTERMOUNTAIN**, a division of Zions Bancorporation, N.A.; **CLINT NEF**, an individual; **DAVID H. LEIGH**, an individual; **MICHAEL D. MAYFIELD**, an individual, **RAY QUINNEY & NEBEKER P.C.**, a Utah professional corporation; **PATRICK GEILE**, an individual, **FOLEY FREEMAN PLLC**, an Idaho professional limited liability company; **D. BLAIR CLARK**, an individual; and **LAW OFFICES OF D. BLAIR CLARK P.C.**, an Idaho professional corporation, **GARY RAINSDON,** an individual, and **SUZANNE HICKOK**, an individual,<br><br>Defendants. | Adv. No. 21-06002-BPH |

---

[1] Plaintiffs have repeatedly complained about due process and expressed their concern that this Court has failed to adequately consider or give this matter the attention it deserves. Under these circumstances, providing Plaintiffs with a written decision that addresses each of the complaints that comprise their Second Amended Complaint seemed prudent.

1

# MEMORANDUM OF DECISION

## I.    Introduction

Plaintiffs Laurie Ann Shoemaker ("Shoemaker") and Joe Beumeler ("Beumeler"), managing members of Debtor JLJ Farms, an Idaho LLC ("JLJ"), filed this adversary action asserting a series of "complaints" premised on events that occurred in JLJ's chapter 12[2] bankruptcy. Shoemaker and Beumeler allege that JLJ's bankruptcy was tainted by conspiracy and bankruptcy fraud and that each of the defendants, either directly or through complicity, conspired to harm JLJ during its bankruptcy.  Shoemaker and Beumeler allege the professionals in the case are incompetent, failed to adhere to applicable ethical standards, or both.

Defendants[3] have moved to dismiss the operative complaint for a litany of reasons, including Plaintiffs' lack of standing, the Court's corresponding lack of jurisdiction, and Plaintiffs' failure to state a claim for relief.  Sorting through the operative Complaint and analyzing whether this action should be dismissed for any of the myriad reasons put forth by Defendants has been challenging because Shoemaker and Beumelers' Complaint ("Complaint") employs language that is hyperbolic, making it difficult to ascertain the precise harm they allegedly suffered in their individual capacities and the relief they are seeking for purposes of standing.

While tempting to focus on the Complaint's exaggerated language and treat the Complaint curtly, the impulse to do so is tempered by the Court's duty to construe pro se parties' pleadings liberally. *In re Cedar Funding, Inc.*, 419 B.R. 807, 816 (B.A.P. 9th Cir. 2009). Further, the serious nature of the allegations against counsel and the presiding judge merit scrutiny. The Court has taken judicial notice of the proceedings, including specific orders in JLJ's bankruptcy case.[4]  Having considered the allegations in the Complaint, JLJ's bankruptcy, and the pending motions to dismiss by Defendants, the Court has concluded the Complaint is subject to dismissal.

---

[2] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88, and references to "ECF No." refer to the docket in this adversary case.

[3] "Defendants" collectively refers to: the Honorable Noah Hillen ("Judge Hillen"); Judge Hillen's law clerk, Suzanne Hickock ("Hickok"); Zions Bancorporation, N.A. f/k/a ZB, N.A. dba Zions First National Bank ("Zions"); SAG Intermountain; David Leigh ("Leigh"); Michael Mayfield ("Mayfield"); Clint Nef ("Nef"); Ray Quinney & Nebeker, P.C. ("Ray Quinney"); Patrick Geile ("Geile"); Foley Freeman PLLC ("Foley Freeman"); D. Blair Clark ("Blair"); and, the Law Offices of D. Blair Clark P.C. ("Clark P.C.").

[4] *In re MSR Hotels & Resorts, Inc.*, No. 13-11512, 2013 WL 5716897, at *1 (Bankr. S.D.N.Y. Oct. 1, 2013) ("A court is empowered to take judicial notice of public filings, including, in an adversary proceeding, those filed on its own dockets in the underlying bankruptcy case.").

## II.   Procedural Background and Allegations in Complaint

### A. Procedural Background

As explained, this adversary proceeding stems from JLJ's dismissed chapter 12 case. JLJ filed its petition for chapter 12 relief on July 31, 2020.[5] JLJ's case was dismissed on February 10, 2021, after it failed to comply with this Court's directive to retain new counsel pursuant to Idaho LBR 9010.1.[6] On January 27, 2021, shortly before JLJ's case was dismissed, Plaintiffs initiated this action by filing a fifty-page document that asserted nine "complaints" against one or multiple Defendants.[7] On February 25, 2021, Plaintiffs filed forty-one pages of "Amendments to Complaints."[8] On March 18, 2021, Plaintiffs filed the present Complaint.[9] Each of the Defendants moved to dismiss the Complaint over the course of the next month.[10] Plaintiffs filed a Response to the motions to dismiss on May 11, 2021.[11] Defendants filed Replies in support of their various motions over the course of the following week.[12]

Despite the pending motions to dismiss and the Court's efforts to sort through the various filings to issue a decision on the same, Plaintiffs used the ensuing months to file a litany of documents requesting various relief and/or leveling accusations against various parties, many of whom are not named in this action. Although most of these filings lacked any basis in law or fact, the Court considered each. It ultimately elected to hold them in abeyance pending a dispositive ruling on Defendants' motions to dismiss.[13] Largely, the Court's decision to that effect did not dissuade Plaintiffs, who not only continued to file various documents in this action, but also pursued an appeal of an interlocutory order to the Bankruptcy Appellate Panel for the Ninth Circuit Court of Appeals ("BAP") that was ultimately dismissed after the BAP determined Plaintiffs failed to establish that leave to appeal was warranted.[14]

### B. The Complaint[15]

Since the Court has been called upon to consider dismissal under different legal theories, including a facial attack on the Complaint, familiarity with the pleading is essential to the

---

[5] ECF No. 1 in Case No. 20-00713-BPH.

[6] ECF No. 94 in Case No. 20-00713.

[7] ECF No. 1.

[8] ECF No. 21. Plaintiffs filed a duplicate document at ECF No. 37.

[9] ECF No. 44.

[10] *See* ECF Nos. 64, 66, 71, 72, and 73.

[11] ECF No. 83.

[12] ECF Nos. 85-89.

[13] ECF No. 104.

[14] ECF No. 174.

[15] Having scrutinized the Complaint and after construing it liberally, the Court has endeavored here to distill each complaint into something capable of analysis, including specific language taken from each alleged complaint.  In doing so, the Court had to make analytical choices about which language to highlight, and which to exclude.  Absent doing so, consideration of the 98-page Complaint is a cumbersome exercise for the drafter and reader.

analysis. Within the Complaint, Defendants are divided into defined groups. The Complaint totals 98 pages and includes 22 subsections, each of which sets forth a different "complaint" against a defined group of Defendants, or in the case of the broader conspiracy claims, all Defendants. The Defendant subgroups are: "Idaho Bankruptcy Court," "Zions," and the "Idaho Bankruptcy Debtors Lawyers". Judge Hillen and Hickok comprise the Idaho Bankruptcy Court Defendant group. The Zions Defendant group is comprised of: (1) Zions Bancorporation, N.A. f/k/a/ ZB, N.A. dba Zions First National Bank; (2) Clint Nef; (3) SAG Intermountain; (4) David H. Leigh; (5) Michael D. Mayfield; and (6) Ray Quinney & Nebeker, P.C. Last, Geile, Foley Freeman, Clark and Clark P.C. make up the Idaho Bankruptcy Debtors Lawyers Defendant group.

The final ten pages of the Complaint set forth the relief Shoemaker and Beumeler seek. Shoemaker and Beumeler summarize the relief they are seeking as follows:

> For now, Plaintiffs believe that the right thing to do here is to 'erase' the JLJ Farms past bankruptcy entirely, make JLJ Farms related entities and Plaintiffs 'whole again' as of October 2019, sanction wrongdoers, and award damages where applicable and arguable by law and precedent, including punitive damage and emotional distress damage awards. Again, Plaintiffs will soon find the legal words for all of these.[16]

### III.    Parties' Position on Dismissal.

Defendants each responded to the Complaint. Defendants Zions and Idaho Bankruptcy Debtors Lawyers challenged Plaintiffs' standing to bring claims in the adversary proceeding, this Court's jurisdiction to hear such claims, and the inability of the claims alleged in the Complaint to survive a motion to dismiss. The Idaho Bankruptcy Court Defendants asserted judicial immunity as an affirmative defense.

### A.    The Idaho Bankruptcy Court's Response.[17]

Defendants Judge Hillen and Hickok both responded in similar fashion. Their response to the Complaint included two components: (1) Judge Hillen and Hickok urge the Court to exercise its discretion and retain jurisdiction even though the bankruptcy case has been dismissed; and (2) Judge Hillen and Hickok argue that judicial immunity bars the suit against them. Accordingly, the Idaho Bankruptcy Court argues dismissal is appropriate under Civil Rule 12(b)(6).

### B.    Zions' Response.[18]

Zions' response states three grounds upon which dismissal of Plaintiffs' Complaint is appropriate. First, Zions argues that Plaintiffs lack standing to assert any claims relating to the dismissal of JLJ Farms bankruptcy. Zions notes that Plaintiffs are not licensed attorneys yet continue to represent a corporate entity. As such, Zions asserts Plaintiffs are in violation of local

---

[16] Page 88 Complaint. In other instances, Plaintiffs request money damages, but the primary relief is a new bankruptcy for JLJ.

[17] ECF Nos. 64 & 66.

[18] ECF No. 73.

rules and binding precedent. Zions also contends that since the Bankruptcy Code generally protects only the debtor, not persons or entities related to or connected with the Debtor, Plaintiffs lack standing. To have standing, Zions argues, a party must assert its own legal rights and interests and cannot rest its claim to relief on the legal rights or interests of third parties. As a result, Plaintiffs lack standing to seek relief for alleged harms suffered by JLJ. Second, Zions argues that with the exception of an alleged stay violation, this Court lacks subject matter jurisdiction over each of Plaintiffs' complaints. Zions further asserts that even if the Court finds subject matter jurisdiction exists, it should abstain from exercising its jurisdiction in this case. Third, Zions contends that the Complaint fails to state a claim upon which relief may be granted.

### C. The Idaho Bankruptcy Debtors' Lawyers' Response.[19]

The Idaho Bankruptcy Debtors Lawyers filed two separate responses. First, Blair and Clark P.C. renewed their Motion to Dismiss[20] filed in response to Plaintiff's initial Complaint. Blair and Clark P.C. urge this Court to dismiss the adversary complaint on jurisdictional grounds, explaining that because the bankruptcy case was dismissed, this Court lacks jurisdiction to proceed with the adversary case.[21]

Geile and Foley Freeman filed a response including four arguments. First, Geile and Foley Freeman argue that Plaintiffs do not have standing to bring the adversary proceeding. Plaintiffs are not the proper parties to bring the claims in their Complaint and, therefore, the Complaint is subject to dismissal. Second, even if Plaintiffs had standing, Geile and Foley Freeman contend that the claims alleged in the Complaint should not be considered in an adversary proceeding under Rule 7001. Rule 7001 is an exhaustive list of designated matters for adversary proceedings, and Plaintiffs' claims do not fall under any of them. Third, Geile and Foley Freeman contend that if the Court concludes any part of the Complaint falls within the scope of Rule 7001, the Court should decline to exercise jurisdiction over the adversary proceeding because the underlying bankruptcy case has been dismissed. Finally, the Idaho Bankruptcy Debtors Lawyers assert that if the Court elects to exercise jurisdiction, the Complaint fails to state a claim as a matter of law against. Similar to Zions, the Idaho Bankruptcy Debtors Lawyers conclude that each of Plaintiffs claims against them in their Complaint are deficient in some manner warranting dismissal.

### IV.   Analysis

When considering the litany of arguments presented by Defendants urging dismissal, the Court must first consider whether it has jurisdiction to consider the dispute. Pursuant to Fed. R. Civ. P. 12(b)(1), a court must dismiss a case if it lacks subject matter jurisdiction. A federal court is presumed to lack subject matter jurisdiction until the party asserting it establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377(1994).  Defendants argue that

---

[19] ECF No. 71 & 72.

[20] ECF No. 29.

[21] ECF No. 29-1.

Shoemaker and Beumeler lack standing to present the litany of complaints that comprise the Complaint.  Absent standing, this Court lacks subject matter jurisdiction over the suit.

Ordinarily, when lack of subject matter jurisdiction is the basis for a motion to dismiss, the movant may either attack the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction or attack the existence of the subject matter jurisdiction in fact. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). Essentially, "[i]n a facial attack, the challenger asserts that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the moving party disputes the truth of the allegations that, by themselves, would invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In this case, the attack is mixed.  In some cases, Zions highlights the insufficiency of the allegations.  In other cases, the attack is factual, and Zions or another defendant has disputed the facts.[22]

Prior to considering the specific requirements of constitutional and prudential standing and applying those standards to each of the complaints, some observations that inform the Court's analysis should be noted at the outset.  First, JLJ is not a plaintiff in this action. Despite the fact that each of Shoemaker and Beumelers' complaints refers to JLJ, its bankruptcy, and the alleged harm that JLJ suffered over the course of that case, JLJ is not a party to this action.[23] Second, JLJ's bankruptcy case was dismissed on February 10, 2021, and neither JLJ, Shoemaker, Beumeler, or any other party requested reconsideration of the order dismissing the case or of any other order or that is the subject of one or more complaints.  Third, neither JLJ, Shoemaker, Beumeler, nor any other party to the JLJ bankruptcy appealed any of the rulings that resulted from the proceedings and are the subject of Shoemaker or Beumeler's complaints.  Fourth, Geile and Clark were employed by JLJ and enjoyed an attorney-client relationship with JLJ alone, not Shoemaker or Beumeler.  Finally, neither Shoemaker nor Beumeler were creditors in JLJ's case.

### A. Standing.

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The doctrine developed as a means to ensure that federal courts did not exceed their traditional authority. *Id.* Consequently, "[t]he doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982); *Warth v. Seldin*, 422 U.S. 490, 498–499, (1975)). Standing focuses on the complaining party itself, rather than the issues the party wishes to adjudicate. *Valley Forge*, 454 U.S. at 484. The doctrine has historically been considered in either constitutional or prudential terms,[24] but both must be satisfied before a

---

[22] For example, Zions contends that "Plaintiffs' claims lack any factual or legal support whatsoever," and that "Plaintiffs misstate and misrepresent what actually took place in the Bankruptcy Case."  ECF No. 73.  These broad statements are followed by specific attacks on Plaintiffs' allegations in the Complaint.

[23] The singular exception to this observation is the allegations involving the co-debtor stay.

[24] Increasingly, the U.S. Supreme Court has suggested that prudential concerns alone do not warrant a dismissal under Civil Rule 12(b)(1) grounds. Accordingly, courts "cannot limit a cause

federal court may exercise jurisdiction over a litigant. *Hill v. Pa. Dep't of Corr.*, 521 Fed. Appx. 39, 40 (3d Cir. 2013).

To establish standing under Article III of the Constitution, plaintiffs must establish three elements. *Lexmark Int'l* at 125. First, they must have suffered an injury in fact. *Id.* Second, the injury must be fairly traceable to the challenged conduct of the defendant. *Id.* Finally, the injury must be capable of being redressed by a favorable judicial decision. *Id.* Collectively, these elements comprise the "irreducible constitutional minimum of standing." *Id.*

Although not as clearly defined as constitutional standing under Article III, prudential standing has been reduced to "at least 3 broad principles: 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Id.* (internal citations omitted)). Important in this case is the prohibition on asserting the rights of another.

"'[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief that is sought.'" *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). The existence of standing is determined by "the facts as they exist when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992) (citation omitted). When a plaintiff commences a suit without standing, there is not a case or controversy. *Lexmark Int'l*, 572 U.S. at 125. In that event, a court lacks Article III jurisdiction over the suit and dismissal under Civil Rule 12(b)(1) is appropriate. *Steel Co.*, 523 U.S. at 101,109–10; *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

## 1. Constitutional Standing.

As noted above, to satisfy the irreducible minimum standards of constitutional standing, Shoemaker and Beumeler must have: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the Defendants; and (3) that is likely to be redressed by a favorable judicial decision. *Lexmark Int'l*, 572 U.S. at 125. Each element must be satisfied.

The injury-in-fact element requires that "the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). Concrete and particularized are each distinct. *Spokeo*, 578 U.S. at 339. "Concrete" requires that the injury "actually exist." *Id.* at 340. "Particularized" requires that a plaintiff be affected in a "a personal and individual way." *Id.* at 339 (internal citations omitted); *see also*

---

of action that Congress has created merely because 'prudence' dictates." *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014). A motion to dismiss on purely prudential grounds is more appropriately considered a Civil Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.

*Valley Forge*, 454 U.S. at 472 (standing requires that the plaintiff "personally has suffered some actual or threatened injury").

It is well settled that a party "cannot rest [its] claim to relief on the legal rights or interests of third parties." *Voigt v. Savell*, 70 F.3d 1552, 1564 (9th Cir. 1995). Indeed, the injury relied upon for standing purposes must be "direct and personal to the particular plaintiff." *Catholic League for Relig. and Civ. Rights v. City and County of San Francisco*, 624 F.3d 1043, 1066 (9th Cir. 2010); *see also Lujan*, 504 U.S. at 561 n. 1 ("[T]he injury must affect the plaintiff in a personal and individual way.").

To satisfy this causation requirement, Shoemaker and Beumeler must show that their alleged injuries are causally linked or "fairly traceable" to the conduct of the Defendants, and not the result of independent choices by another party not before the Court. *Wash. Envt'l Council v. Bellon,* 732 F.3d 1131, 1141 (9th Cir. 2013). "Fairly traceable" overlaps with redressability. Both have been characterized as "two facets of a single causation requirement." *Id.* at 1146. "[C]ausality examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested judicial relief." *Id.*

## 2. Prudential Standing.

The "prudential standing rule ... normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. 490, 509 (1975). "[T]he plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Id*. at 499. Prudential standing considerations are particularly relevant in the bankruptcy context, as the proceedings regularly involve multiple parties who may find it "personally expedient to assert the rights of another party even though that other party is present in the proceedings and is capable of representing himself." *In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013).

Prudential standing is "not really standing in a jurisdictional sense, and as such, a defendant may not bring a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) where the alleged 'lack of standing' is merely prudential." *Renco Grp., Inc. v. Wilmington Trust, N.A. (In re Magnesium Corp. of Am.)*, 583 B.R. 637, 647 (Bankr. S.D.N.Y. 2018). Prudential, or statutory standing, does not belong in the traditional standing inquiries because "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional power to adjudicate the case." *Id.* (citing *Lexmark*, 572 U.S. at 127 n. 4). Accordingly, a motion to dismiss purely on prudential standing should be construed as a motion to dismiss under Civil Rule 12(b)(6). *Id.* However, while prudential standing alone is not enough to warrant dismissal under Civil Rule 12(b)(1), as noted above, both "the constitutional and prudential components of standing must be satisfied before a litigant may seek redress in a federal court." *Hill*, 521 Fed. Appx. at 40.

**B. Scrutiny of the allegations in the Complaint demonstrate that, with one exception, Shoemaker and Beumeler do not have standing to prosecute their "complaints."**

> **1. Plaintiffs' lack of standing generally, as exhibited from even a cursory review of the Complaint, subjects each of their individual claims to dismissal.[25]**

The Bankruptcy Code "generally protects only the debtor, not persons or entities related to or connected with the debtor." *United States v. Condel, Inc. (In re Condel, Inc.)*, 91 B.R. 79, 82 (9th Cir. 1988). In this case, JLJ was the debtor in the underlying bankruptcy. Neither Shoemaker nor Beumeler appeared in the underlying case as creditors or parties in interest. To satisfy their burden of establishing the irreducible minimum standard of constitutional standing, Shoemaker and Beumeler must "clearly . . . allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citing *Warth*, 422 U.S. at 518). Further, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* In this case, the pleadings either fail to sufficiently allege an injury suffered by Shoemaker and Beumeler individually attributable to Defendants' conduct, or the record in JLJ's bankruptcy contradicts Shoemaker and Beumelers' allegations related to injury or harm.[26] Under either alternative, there is no case or controversy to adjudicate because Shoemaker and Beumeler have failed to establish any injury in fact for Article III standing purposes.

> **a. The allegations underlying the Complaint are contested, and this Court may consider the record to resolve those disputed issues.[27]**

Defendants have contested the allegations underlying many of the complaints. Shoemaker and Beumeler have alleged evidence of their complaints can be found in the record in JLJ's bankruptcy case.[28] Scrutiny of JLJ's bankruptcy, along with the orders and proceedings that underly the complaints contradict the allegations in the Complaint. Most importantly, the

---

[25] The Court acknowledges derivative standing may be relied on in some circumstances, but neither Shoemaker nor Beumeler have presented such an argument.

[26] The exceptions to this conclusion are complaints 17 and 18. These complaints allege an injury to Shoemaker and Beumeler attributable to certain Defendants' conduct, but ultimately fails for other reasons.

[27] The Court may resolve certain factual issues in its determination of jurisdiction without converting the Civil Rule 12(b)(1) motion to one for summary judgment. *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Civil Rule 12(b)(1) motion into one for summary judgment).

[28] "The evidence is simply on public record in the timeline and filing contents of the Bankruptcy Case Docket. The particular timeframe of interest for this Complaint in that docket is from 01/04/2021 (or 12/31/2020 if not before) through today." Complaint page 23.

record shows that JLJ's bankruptcy was dismissed after JLJ failed to comply with an order of the Court.

JLJ struggled to maintain a relationship with its counsel throughout its bankruptcy. Foley Freeman and Geile withdrew 70 days after the case was filed. When Foley Freeman and Geile withdrew, Clark and Clark P.C. were substituted in as counsel. Clark and Clark P.C. withdrew approximately 80 days after Foley Freeman and Geile withdrew and approximately 150 days after the case was filed. Despite the problems with counsel, JLJ successfully litigated and negotiated outcomes that allowed it to use cash collateral throughout its case and resolved issues related to sale of a tractor.

The Court approved the employment of Geile, Foley Freeman, Clark P.C., and Clark pursuant to 11 U.S.C. § 327. In connection with approval of the employment, the professionals filed disclosures that established they were disinterested and only represented Debtor JLJ. Although the reasons for counsels' withdrawal are disputed, resolution of this issue is irrelevant to the Court's determination of whether Shoemaker and Beumeler have standing. It is undisputed from the record in JLJ's bankruptcy that Geile, Foley Freeman, Clark P.C., and Clark represented JLJ, not Shoemaker and Beumeler. Shoemaker and Beumeler allege that Zions' *ex parte* motion was the catalyst for the dismissal of JLJ's bankruptcy case and otherwise improper. The record shows that on January 4, 2021, JLJ was on notice that Clark and Clark P.C.'s withdrawal had been approved subject to certain conditions. These conditions included completion of certain tasks beneficial to JLJ. An objective review of the record shows that Clark and Clark P.C. filed a motion to withdraw as counsel on December 28, 2021. JLJ was aware of the motion and through Clark filed its objection to withdrawal. The objection was heard on January 4, 2021, and Shoemaker and Beumeler appeared at the hearing. Between January 4, 2021, and February 10, 2021, JLJ had 37 days to retain new counsel.

Following the January 4, 2021, hearing on the motion to withdraw, the Court directed JLJ's counsel to submit an order approving the motion to withdraw only after:

1. A consensual cash collateral order between Zions First National Bank and the chapter 12 trustee had been submitted and entered of record;
2. Counsel submitted a report of sale regarding the auction sale [tractor sale] that was approved by Court Order, Doc. No. 68; and,
3. Counsel submitted an application for approval of compensation for the auctioneer employed by Court Order, Doc. No. 67.

(1, 2, and 3 are referred to as the "Conditions"). The Court further directed that, "Counsel's proposed order shall contain the language required under Idaho Local Bankruptcy Rule ("LBR") 9010.1(f)(2) warning Debtor and creditors that no actions will occur in this case for 21 days from the entry of the Order granting Counsel's Motion to Withdraw, and that after the Order allowing Counsel to withdraw is entered, failure of Debtor to obtain new counsel within the prescribed time will result in dismissal of the above captioned case."[29]

---

[29] ECF No. 76.

Once the Conditions occurred, Clark PC was permitted to withdraw as counsel to JLJ. The Order granting the withdrawal stated:

> Debtor shall appear through new counsel in this case within twenty-one (21) days from the entry of this order. No further proceedings will be held in this case that would affect Debtor's rights within those twenty-one (21) days. Debtor's failure to appear in this case through new counsel within that twenty-one (21) day period shall be sufficient grounds for entry of an order dismissing this case without further notice or hearing.[30]

The Order was entered on January 15, 2021. At the expiration of the 21-day period within which JLJ was to obtain counsel, Zions filed a "Ex Parte Motion" for Order dismissing case for JLJ's failure to comply with prior order of Court and retain counsel."[31]   On the next day, Judge Hillen recused himself, and the case was assigned to the undersigned.[32]   The undersigned dismissed this case pursuant to Idaho LBR 9010.1(e)(3) and (f)(2) ("failure to appear in the action in person or through newly appointed counsel within that twenty-one (21) day period shall be sufficient grounds for entry of default or dismissal of the action without further notice").[33]   The Complaint fails to recognize that JLJ's case was dismissed only after JLJ failed to retain counsel in direct violation of the Court's Order.

Beyond these facts that are clear from the record, the remaining allegations correspond to allegations of fraud and conspiracy in the underlying case, ethical violations, and disputes regarding specific proceedings including cash collateral, sale of a tractor, and withdrawal of counsel.  These allegations and the corresponding conclusions Shoemaker and Beumeler assert similarly find no support in the record.  However, even if a scintilla of support in the record did exist, the allegations in the Complaint fail to establish that a legally protected interest of Shoemaker and Beumeler's was harmed or that the alleged injury is capable of redress by this Court in this proceeding.  The only possible exception to this conclusion is the complaint involving the alleged violation of the co-debtor stay by Zions.  However, that complaint is subject to dismissal on different grounds as explained below.

---

[30] ECF No. 86.

[31] ECF No. 90.

[32] Presumably recusal was in response to being named as a defendant in this action.  See ECF No. 91.

[33] *See also Rowland v. Cal. Men's Colony, Unit II Men's Advisory Counsel*, 506 U.S. 194, 201-202, (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel."); s*ee also, In re Bigelow*, 179 F.3d 1164, 1165 (9th Cir. 1999) (citing *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (holding that "a corporation can be represented only by a licensed attorney.")); *Solis v. Timber Savers, Inc.*, No. 3:10-CV-547-BLW, 2010 WL 5113066 at *1-2, (D. Idaho Dec. 3, 2010).

**b. Reconsideration or appeal are ordinarily the recognized alternatives for seeking relief, not separate adversary proceedings commenced by complaint.**

Plaintiffs seek relief from the order dismissing JLJ's bankruptcy case by way of adversary complaint in this action. Seeking relief in this fashion, by initiating a separate action with JLJ's creditors, JLJ's counsel, the presiding judge in JLJ's case, and his law clerk as defendants, finds no support in the law. As one court explained:

> Disappointed litigants who do not like the contents of a trial court's court order have the opportunity to appeal, or to move for reconsideration of, that order and, pending the outcome of that appeal or motion, to apply for a stay pending appeal.

*In re GGW Brands, LLC*, 2014 WL 12966865 *16 (Bankr. C.D. Cal. 2014). If JLJ, Shoemaker or Beumeler were aggrieved by dismissal of JLJ's bankruptcy case, they could have appealed to a higher court for review or requested consideration pursuant to Civil Rules 59 and 60, made applicable by Rules 9023 and 9024 respectively. They failed to pursue either option. Neither the Code nor Rules contemplate the commencement of an adversary proceeding to obtain relief under Civil Rules 59 or 60 or to pursue a *de facto* appeal of a prior final order before the same court that issued it.

The order dismissing JLJ's bankruptcy was a final order. To determine whether an order is "final" in bankruptcy, two questions are typically considered: (1) whether the bankruptcy court's order fully and finally determined the discrete issue or issues it addressed; and (2) whether it "resolves and seriously affects substantive rights." *Eden Place, LLC v. Perl (In re Perl)*, 811 F.3d 1120, 1126 (9th Cir. 2016). The order dismissing JLJ's bankruptcy fully and finally resolved the underlying case. Dismissal of the case terminated JLJ's ability to seek bankruptcy relief.[34] Accordingly, it was a final order subject to appeal or reconsideration.

Rule 8002(a) requires an appeal to be filed within 14 days after entry of the judgment, order, or decree being appealed. Rule 8002(a) "acts as an immutable constraint on [the] authority to consider and hear appeals." *Wilkins v. Menchaca (In re Wilkins)*, 587 B.R 97, 107 (B.A.P. 9th Cir. 2018). While strict enforcement of the 14-day deadline may lead to a "harsh result," the appellate court is obliged to enforce it. *Id.* Appeals outside this 14-day window are untimely and thus subject to dismissal for lack of jurisdiction. *Id.* at 100. The Order dismissing JLJ's bankruptcy was entered on February 10, 2021. A timely appeal was not filed.

JLJ could have requested reconsideration of the Order dismissing the case pursuant to Rule 60(b). Relief under Rule 60(b) permits "a party" subject to a final judgment to request reconsideration. Rule 60(b)(3) affords relief from a judgment or order on the basis of fraud, misrepresentation, or misconduct by an opposing party. If the Court accepts the allegations in

---

[34] The First Circuit has held, "An 'order dismissing a chapter 13 case is a final, appealable order. . .'" *Witkowski v. Boyajian*, 523 B.R. 300, 305 (B.A.P. 1st Cir. 2014).

the Complaint as true, those allegations align with the relief ordinarily available under Rule 60(b)(3).

Nonparties are not entitled to request relief under Rule 60(b). *See Citibank Int'l v. Collier–Traino, Inc.*, 809 F.2d 1438, 1440–41 (9th Cir. 1986). Accordingly, even if relief were requested in a procedurally appropriate manner by motion, neither Shoemaker nor Beumeler could seek reconsideration under Rule 60, as they were not parties in JLJ's bankruptcy. [35] By failing to appeal or request reconsideration of the order dismissing JLJ's case, JLJ lost the ability to revisit those issues. Shoemaker and Beumeler's efforts to seek relief on behalf of JLJ here are meritless.

This adversary proceeding seeks extraordinary relief not contemplated by the Code — a "rolled back" or "do-over" bankruptcy for JLJ. If entertained, it would afford relief to JLJ not by appeal or reconsideration, but by complaint.  There is no basis for this request, and prior precedent has foreclosed the adoption of any fuzzy rationale that relies on the Court's equitable powers as a basis to revisit dismissal.  "[F]inal orders may be set aside only under Civil Rule 60(b) applicable via Rule 9024; the bankruptcy court may not use its inherent power to circumvent the limitations of those rules."  *Missoula Fed. Credit Union v. Reinertson*, 241 B.R. 451, 456 (B.A.P. 9th Cir. 1999). Absent a Rule, Code section, or other authority, this Court cannot "erase" JLJ's bankruptcy in this adversary proceeding.[36]

### 2.   Consideration of the Complaint on a "complaint" by "complaint" basis.

#### a.   Complaint 1-Violation and Obstruction of JLJ Chapter 12 Bankruptcy, Complaint 2-Conspiracy by a Judge, a law clerk and Zions to harm and kill JLJ, Complaint 3-Unlawful Ex Parte Motion to Dismiss JLJ Farms Bankruptcy Case in Conspiracy with a Judge and Law Clerk, Complaint 4-Violation of JLJ's right to due Process.[37]

Shoemaker and Beumeler lack standing to assert Complaint 1.  Complaint 1 fails to allege a concrete and particularized harm suffered by Shoemaker and Beumeler.  As evident from the labels Shoemaker and Beumeler have given their "complaints," without exception, Complaints 1-4 revolve around alleged harm to JLJ, not to Shoemaker and Beumeler individually (i.e., "Obstruction of JLJ Bankruptcy, Conspiracy to harm and kill JLJ, Unlawful *ex parte* motion to dismiss JLJ bankruptcy, violation of JLJ's right to due process.").

Consideration of the specific allegations underlying each complaint further supports this conclusion. Plaintiffs complain that JLJ was denied bankruptcy protection in part because

---

[35] With the exception of a singular paragraph in a cash collateral order discussed below, JLJ's bankruptcy did not substantively consider or address Shoemaker and Beumelers' individual interests.

[36] In essence, even if injury was sufficiently pled for standing purposes, the Court cannot redress the alleged harm with a "do over" bankruptcy.

[37] *See* pages 19-40 Complaint.

applicable rules were not followed by the Defendants and Bankruptcy Court.  If rules were not followed and the Court, JLJ could have filed an appeal or requested reconsideration but failed to do so.

Further, Plaintiffs allege Zions was afforded too much of a role in the case.  The specific allegations include, "Zions was included in informal negotiations . . . Zions was controlling the discussion and dictating the bankruptcy case . . . Zions inserted into Debtors' filings as enabled by Debtors Idaho Bankruptcy Lawyers and Defendant Noah J. Hillen."  This complaint concludes by seeking, "rulings in favor of JLJ and its related entities, among others."  Again, these allegations might have formed the basis of a motion to reconsider or appeal, not an adversary complaint.

The failure to allege a harm suffered by Shoemaker and Beumeler, along with their request for relief "in favor of JLJ," is fatal to Shoemaker and Beumelers' claims. Their allegations illustrate a pattern of pleading that is evident throughout the Complaint.  Allegation after allegation focuses on JLJ, before generally concluding the relief sought is "rulings in favor of JLJ."  The pleadings assert that fraud and misrepresentations resulted in the dismissal of JLJ's bankruptcy, which harmed it. To Plaintiffs, a "do over" is the only relief capable of redressing this harm.  Unfortunately, these allegations and relief (as fantastic as they may be), correspond to JLJ alone, not Shoemaker and Beumeler.

If JLJ had filed a motion for reconsideration, (i.e., JLJ's bankruptcy was dismissed on the basis of fraud or misrepresentation), consideration of these issues might be properly before the Court. It elected not to do so. Instead, this Court is being asked in this adversary complaint to act as a *de facto* appellate court, to survey the entirety of the JLJ bankruptcy, and based upon that review, grant JLJ a "rolled back" bankruptcy, all upon the request of Shoemaker and Beumeler individually.  There is simply no Code section or Rule that would allow the Court to grant JLJ such relief.

Having failed to allege a harm independent of the alleged harm to JLJ or allege that the alleged harm to JLJ resulted in a concrete and particularized injury to them, the Court must guess as to the nexus or "causation" link between the dismissal of the JLJ bankruptcy and any alleged injury to Shoemaker and Beumeler.  Similarly, the Court is constrained to recognize that JLJ's bankruptcy case was dismissed, and the Order dismissing the case was final and not appealed. Further, reconsideration of that Order has never been requested. These facts severely limit the scope of any relief that might ultimately be afforded to JLJ.

The Court's analysis of Complaint 1 applies with equal force to Complaints 2, 3, and 4. Complaints 2, 3, and 4 are merely variations on the themes and allegations in Complaint 1, and each complaint fails for the same reasons.  Notably, Shoemaker and Beumeler boldly allege "Complaints #2, #3, and #4 are evidenced by the same Bankruptcy Case timeline, docket, and filings from 01/04/2021, which are summarized in four (4) different 'Explanations of the Timeline of the Conspiracy', as evidenced simply from that docket."  Contrary to this conclusory statement, the JLJ docket does not bear any indicia of a conspiracy, fraud, or other chicanery. Instead, it shows JLJ failed to comply with an order of the Court and suffered the consequence based on its failure to do so–dismissal.  Shoemaker and Beumeler lack standing to pursue

14

Complaints 1, 2, 3, and 4. As a result, dismissal for lack of subject matter jurisdiction is appropriate.

### b. Complaint 5 – Idaho Clerk's Office's Personnel and Law Clerks' Unlawful and or Incompetent Obstructions; No Defendant(s) yet identified.[38]

Complaint 5 is peppered with conspiratorial language, general references to due process, but explicitly admits the specific Defendants associated with the alleged conspiratorial conduct have not been identified, "yet." This complaint appears to be a placeholder for a future claim against future Defendants when Shoemaker and Beumeler discover additional information. The tone of this Complaint is analogous to a customer service grievance, not a case or controversy under Article III. It is subject to dismissal for lack of standing.

### c. Complaints 6 and 7 – Tractor Sales Proceeds Unlawfully Taken by Zions Defendants from Debtor JLJ Farms.[39]

The allegations in Complaint 6 and 7 reflect an effort to relitigate issues in JLJ's bankruptcy. In essence, Complaint 6 alleges the proceeds from a court approved sale of JLJ's tractor were unlawfully taken by Zions and that JLJ's counsel was complicit in the act, (Complaint 7). The allegations associated with Complaint 6 and 7 correspond to: (i) JLJ's Motion to Sell Property Free and Clear of Liens; (ii) Order granting Motion to Sell Free and Clear of Liens; (iii) Trustee's Report of Sale of Tractor; and (iv) Stipulation between Chapter 12 Trustee and Zions.[40] Collectively, these pleadings show that JLJ requested authorization to sell a tractor free and clear of liens at the end of November 2020. The sale was approved in mid-December. Following the sale, the Chapter 12 Trustee and Zions stipulated to the disposition of the sales proceeds, and the stipulation was approved. The stipulation recognized Zions had a valid security interest in the tractor, and pursuant to the motion to sell free and clear, proceeds from the sale of the tractor.

If the disposition of the sales proceeds was made pursuant to court order, it was not unlawful. Further, if the disposition deviated from the court order, the alleged harm was to JLJ, not Shoemaker and Beumeler. Under the sale motion, it was Debtor's interest in the tractor that was sold ("Debtor intends to sell all right title and interest . . ."). Having sold Debtor's interest in the tractor, the proceeds from the sale would correspond to that interest, not an interest of Shoemaker or Beumeler. Despite having read the Complaint innumerable times, the Court cannot conclude any interest of Shoemaker or Beumeler may have been injured due to Zion's receipt of the proceeds pursuant to the Court's Order approving the stipulation. If they were injured, redress should have been requested by appeal or motion to reconsider. Shoemaker and Beumeler have failed to satisfy the requirements for standing and this complaint must be dismissed because the Court does not have subject matter jurisdiction.

---

[38] *Id.* at 41-42.

[39] *See* pages 43-47 Complaint.

[40] *See* ECF 53, 68, 77, and 81 respectively.

### d. Complaint 9- Bankruptcy Fraud No. 1, Complaint 10-Complicity in Creditor Fraud # 1, Complaint 10 [sic]-Creditor Bankruptcy Fraud # 2, Complaint 11-Complicity in Creditor Fraud # 2, Complaint 11 [sic]-Creditor Fraud # 3, Complaint 12-Complicity in Creditor Fraud # 3.[41]

The allegations of fraud in Complaints 9-12, including complicity in it, fail for the same reasons as Complaints 1-4, and are each rooted in JLJ's prior bankruptcy. The allegations in Complaints 9-12 focus on hearings and outcomes involving cash collateral hearings in September and December. Complaint 9 alleges Zions' objection to JLJ's motion to use cash collateral and its indication it intended to present evidence at the hearing were fraudulent. Complaint 10 alleges Geile was complicit in the fraud. Complaint 11 is similar to 9 and alleges that Zions' objection to continued use of cash collateral in December was fraudulent and that Clark and Clark P.C. were complicit in the fraud.

If the allegations were taken as true, it is abundantly clear that JLJ, not Shoemaker or Beumeler, was the party allegedly harmed by the conduct of Zions and JLJ's counsel. JLJ could have sought to redress this harm by motion to reconsider or appeal. It failed to do so. Most problematic, though, is the fact that even a cursory review of the record shows that the allegations are simply not true. The allegations are nonsense. If Zions and JLJ's counsel were participants in a fraud on the Court that was intended to harm JLJ, their efforts failed because following both the September and December hearings, JLJ was permitted to use the cash collateral.[42] It is impossible to conclude Shoemaker and Beumeler may have suffered injury as a result of court proceedings in which JLJ was granted the relief it requested, use of cash collateral. This complaint is subject to being dismissed because Shoemaker and Beumeler have not sufficiently alleged an injury to them, capable of redress. The irreducible minimum of Article III standing has not been satisfied. This Court lacks subject matter jurisdiction over this complaint and dismissal is necessary as a result.

### e. Complaint 13-Unlawful Prohibition on Use of Cash Collateral, Complaint 14-Complicity in failure to designate, and Complaint 15-Complicity by judge.

Once again, to assess whether Shoemaker and Beumeler have standing to assert these complaints, the Court resorts to consideration of the record in JLJ's bankruptcy case. Absent allegations that Defendants' conduct harmed a legally protected interest of Shoemaker and Beumeler, they lack standing to assert these complaints.

The allegations in Complaints 13, 14, and 15 relate to alleged harm caused to JLJ by Zions' alleged failure to endorse checks in connection with JLJ's use of cash collateral. Further it is alleged that Clark and Judge Hillen should have acted differently in conjunction with JLJ's authorization and use of cash collateral. It alleges that Clark and Judge Hillen "covered up and ignored both the Debtor multiple reports of 'Zions' unlawfulness as well as the real harms to Debtor while in Bankruptcy." In essence, Zion's unlawfulness in JLJ's bankruptcy case was allowed by JLJ's counsel and the presiding judge.

---

[41] *Id.* at 52-61.
[42] ECF No. 38.

JLJ requested authorization to use cash collateral early in its bankruptcy.[43]  In its first request, JLJ sought approval to use cash collateral consistent with a budget attached to the motion.  Although initially opposed by Zions,[44] the issues were resolved by the parties,[45] and a "Final Order Authorizing Use of Cash Collateral" was entered.[46]  The Order permitted JLJ to use cash collateral for the period from September 23, 2020, to December 31, 2020.  As December 31, 2020, approached, Zions and JLJ represented to the Court that an agreed order regarding continued cash collateral would be submitted.[47]  Ultimately, Zions agreed to continued use of cash collateral by JLJ through February 28, 2021.[48]

Notably, these complaints do not refer to any individual interest of Shoemaker or Beumeler or allege that an individual interest of Shoemaker or Beumeler was harmed by Defendants' alleged conduct.  Like the other complaints, Complaints 13, 14, and 15, involve JLJ's interests and invite this Court to revisit matters that are the subject of final orders that were not appealed by JLJ.  Shoemaker and Beumeler do not have standing to assert these complaints.  As a result, this Court does not have subject matter jurisdiction over this complaint.  The complaint must be dismissed.

### f.  Complaint 16-Violations of a Court Order and Improper Judicial Access.

The allegations in this complaint recite events that allegedly occurred at a hearing before Judge Hillen on January 4, 2021.  Like Complaint 4, the allegations here are supplemented by quoted statements.  These quoted statements do not reflect what was actually said, but instead, Shoemaker and Beumeler's interpretation of what was being said ("I want you to know Judge that we have 'dirt' on this Debtor.  I want you to know Judge that Zions is above the law, and we do not honor court proceedings including the rule 9010.1, and we do not . . .").  This imagined messaging underlies Complaint 16.  It highlights the extraordinary disconnect between the record of proceedings in JLJ's case and Shoemaker and Beumeler's revisionist version of those proceedings in the Complaint.

The record undermines these allegations. But, even if true, the allegations plainly state that the conduct was directed at JLJ, not Shoemaker and Beumeler.  Like the other complaints, Complaint 16 focuses on alleged conduct involving Zions and JLJ.  At the very end of the complaint, Shoemaker and Beumeler attempt to piggyback onto the alleged harm JLJ suffered by claiming, "Leigh should be held accountable . . . for Creditor Harassment of a Debtor in court and defaming JLJ Farms and the Plaintiffs there . . ."  Nothing in Complaint 16 articulates a specific act by Leigh that allegedly harmed the individual interests of Shoemaker or Beumeler and is capable of redress by this Court.  Complaint 16 is subject to dismissal because Shoemaker and Beumeler do not have standing.

---

[43] ECF No. 18.
[44] ECF No. 27.
[45] ECF No. 31.
[46] ECF No. 38.
[47] ECF No. 69.
[48] ECF No. 75.

g. **Complaint 8-Unauthorized filing on behalf of JLJ, Complaint 19 - Alleged Ethical and Professional Violation by JLJ's counsel, Complaint 20 – Professional Violations unique to Geile, Complaint 21 - Professional Violations unique to Clark.**

These complaints reflect a fundamental misunderstanding of the attorney client relationship that existed between JLJ, Foley Freeman, Geile, Clark, and Clark P.C. Simply put, this relationship did not include Shoemaker and Beumeler. According to the disclosures that accompanied the employment applications filed in JLJ's bankruptcy, counsel was disinterested and only represented JLJ. Although counsel owed certain duties to JLJ, the record in the bankruptcy indicates counsel owed no duties to Shoemaker or Beumeler.

Complaint 8 is difficult to categorize because the Court cannot discern the precise conduct being complained of, but includes, "Plaintiffs add this unlawfulness to their list of ethical and professional violations" and attribute the acts to Clark. Complaint 8 reflects little more than Shoemaker and Beumeler's quibbling over whether Clark was authorized to file certain pleadings for JLJ.

Complaint 19 asserts, "both lawyers simply did not, could not, refused to, would not, defend their debtor client, JLJ Farms, LLC." This statement is followed by a recitation of certain rules of professional and ethical conduct applicable to lawyers in Idaho and alleges that the rules were violated. Foley Freeman, Geile, Clark, and Clark P.Cs' client was JLJ, not Shoemaker or Beumeler.

The allegations in Complaint 20 set forth a litany of alleged conduct or incidents that purportedly violated certain provisions of the Idaho Rules of Professional Conduct. The specific allegations outline disagreements, disputes, and negative interactions between Shoemaker and Geile that occurred during the course of Geile's representation of JLJ. More so than anywhere else in the Complaint, Shoemaker refers to herself. The allegations reflect fundamental disagreements between Shoemaker and Geile on how Geile should represent JLJ.

The allegations against Clark in Complaint 21 are less detailed than the allegations against Geile. Rather than highlight fundamental disagreements, Complaint 21 alleges that Blair was provided certain information by Shoemaker in connection with his representation of JLJ that he later claimed he did not have or was not provided.

As a preliminary matter, it is worth noting that the preamble to the Idaho Rules of Professional Conduct establish the rules "are not designated to be a basis for civil liability." The Supreme Court of Idaho has explained:

> The [Idaho Rules of Professional Conduct] do not create any statutory liability, do not give rise to a cause of action against a lawyer, and do not create any presumption that a legal duty has been breached. Just because a rule is a basis for sanctioning a lawyer under the administration of a disciplinary authority does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule.

*High Valley Concrete, L.L.C. v. Sargent*, 234 P.3d 747, 754 (Idaho 2010). Since the Idaho Rules of Professional Conduct do not give rise to a cause of action, the Court cannot conclude Shoemaker and Beumeler individual interests were harmed by the alleged violations of these rules, or are entitled to the relief they seek, even if the allegations against Foley Freemen, Geile, Clark and Clark P.C. were true.

More fundamentally, counsel did not owe any duty to Shoemaker or Beumeler. This precludes either of them from seeking relief based on any alleged professional negligence by counsel towards JLJ. *See Harrigfeld v. Hancock*, 90 P.3d 884, 887 (Idaho 2004) ("As a general rule, an attorney will be held liable for negligence only to his or her client and not to someone with whom the attorney does not have an attorney-client relationship."). If JLJ's counsel was negligent, the law protects JLJ's interest, and permits JLJ to assert a claim for negligence. The same is not true with regard to Shoemaker and Beumeler. Absent a duty, harm to Shoemaker and Beumeler attributable to counsel's representation of JLJ is inconceivable.

Returning to a familiar theme, even if the allegations are accepted as true, Shoemaker and Beumeler have failed to establish that they individually suffered any injury attributable to the conduct of JLJ's counsel, Foley Freeman, Geile, Clark, and Clark P.C. Their inability to even plead (much less establish) any concrete and particularized injury they suffered at the hands of JLJ's counsel dictates that the complaints must be dismissed for lack of standing.

### h. Complaint 19 and 22 – Complaints unique to Judge Hillen.[49]

Without exception, Complaint 19 and 22 relate to alleged errors Judge Hillen made in his judicial capacity while presiding over JLJ's bankruptcy. Shoemaker contends the errors are indicative of incompetence, negative debtor bias, favoritism, and generally offers a critique of innumerable matters that occurred in JLJ's bankruptcy. One of her critiques explains, "this should be 'Chapter 12' with Creditor(s) and Trustee allowed a voice only at a 341 Creditor's Hearing and during the 21-day review period through Creditor Objections to the Plan filed through the court." The implication is that creditor and trustee involvement in JLJ's bankruptcy should have been severely circumscribed. Based on the alleged error and others, Shoemaker complains that JLJ was denied a defense in its bankruptcy. Once again, the complaint is that Defendants' conduct harmed JLJ, with little attempt to allege an injury suffered by Shoemaker and Beumeler.

The allegations raise serious questions about the bankruptcy process. Shoemaker and Beumeler have attacked the integrity of the process and the judge presiding over JLJ's bankruptcy case simply because they are unhappy with the disposition of JLJ's case. Notably, JLJ is not complaining about the disposition of its case; Shoemaker and Beumeler have usurped that role. Like other complaints, the allegations in this complaint are hard to reconcile with the record. Further, these complaints reflect Shoemaker's subjective of view of how a bankruptcy should work. As this Court surveys the JLJ bankruptcy, it concludes Shoemaker and Beumeler lack standing to maintain Complaints 15 and 22.

---

[49] *Id.* at 71-87.

Like the other complaints, the language Shoemaker and Beumeler employed to articulate their grievances establishes this complaint seeks to relitigate issues that were the subject of orders that JLJ did not appeal and are final.  For example, the complaint alleges:

> Defendant Hon. Noah G. Hillen denied, and has denied, Debtor JLJ Farms bankruptcy protections and protection from Creditor Harassment throughout this bankruptcy case. And, on top of that overarching violation, as specifically evidenced in the 01/04/2021 hearing in his court and his subsequent court orders, that judge allowed and enabled and encouraged Creditor 'Zions' to harass and harm Debtor JLJ Farms further in his very court proceeding. Specifically, Defendant Hon. Noah G. Hillen allowed and enabled and encouraged Defendant David H. Leigh to speak against Debtor and Plaintiffs in Debtor's and Debtor's lawyer's hearing about attorney withdrawal.[50]

Complaint 22 invites this Court to revisit prior hearings and decisions it made and find fault with itself, despite the fact that JLJ neither appealed the orders that followed the hearing nor requested reconsideration.  Further, the allegations plainly show that any alleged error may have impacted JLJ, but Complaint 22 is devoid of any allegation explaining how Shoemaker and Beumeler were injured.

Shoemaker and Beumeler have not alleged in Complaint 22 any injury in fact they individually suffered attributable to Judge Hillen's rulings.  However, even if Shoemaker and Beumeler had successfully pled an injury in fact in Complaint 22, the complaint would not be before this Court in a procedurally appropriate manner.  When confronted with an adversary complaint involving a nonparty plaintiff against the presiding bankruptcy judge as defendant, seeking damages and an injunction on the basis of actions by defendants in the bankruptcy case over which the judge presided, one court concluded:

> The plaintiff's purported claims against the defendant herein have been asserted in a procedurally inappropriate manner. If one who is interested does not approve of what a bankruptcy judge-or any judge-does in a particular case, one appeals and has another tribunal take a second look. The above-entitled action, of course, is not an appeal. It cannot be substituted for an appeal not taken. Sound and fair principles of jurisprudence hold that when a party fails to appeal, the judgment of the lower court is conclusive, both as to the original parties, and as to subsequent parties who in some way succeed to an original party's interests.

*Centre for Independence of Judges and Lawyers of the U.S., Inc. v. Mabey*, 19 B.R. 635, 649 (D. Utah 1982).  This Court finds the thorough consideration of the issues in *Mabey* persuasive and applicable here.  This adversary proceeding is not and cannot be substituted for an appeal not taken.

Equally important, Shoemaker and Beumelers' attempt to turn their disagreement with the Court's rulings into a cause of action against the presiding judge highlights the importance of judicial immunity to ensuring independent and disinterested judicial decision making.  The Ninth

---

[50] *Id.* at 83.

Circuit Court of Appeals has opined that "[u]nder well-settled precedent" litigants "may challenge those prior rulings only via appeal, not by suing the judges. *In re Thomas*, 508 F.3d 1125, (9th Cir. 2007) (citing *Mireles v. Waco*, 502 U.S. 9, 11–12, (1991)). Similarly, the Seventh Circuit Court of Appeals has observed, "a litigant files an appeal, rather than suing the judge or the court of which the judge is a member, if he does not like decisions by the trial court . . ." *Caudle v. American Arbitration Ass'n*, 230 F.3d 920, 922 (7th Cir. 2000).

"Judicial immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). "Nor is judicial immunity lost by allegations that a judge conspired with one party to rule against another party." *Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996) (superseded on other grounds) (internal citation omitted). When clearly assisting a judge in carrying out the former's judicial functions, a law clerk falls under the umbrella of judicial immunity because they are "probably the one participant in the judicial process whose duties and responsibilities are most intimately connected with the judge's own exercise of the judicial function." *Moore*, 96 F.3d at 1245. For purposes of absolute immunity, judges and their law clerks are as one. *Olivia v. Heller*, 839 F.2d 37, 40 (2nd Cir. 1988).

There exist very narrow exceptions to judicial immunity. Namely, where a judge acts in the clear absence of jurisdiction, or where the judge's actions are not taken in his judicial capacity. *Thomason v. Moeller*, 2017 WL 241322 *9 (D. Idaho 2017) (internal citations omitted). A close comparison of the allegations in the Complaint, with the record in JLJ's bankruptcy show that neither exception is applicable in this case. The acts complained of in the Complaint occurred in JLJ's bankruptcy. The alleged acts that are the subject of Complaint 22 all occurred in a judicial capacity. Finally, no basis exists for Shoemaker and Beumeler to assert that Judge Hillen acted without jurisdiction. *See also JNC Companies v. Ollason*, 137 B.R. 46, 50 (D. Ariz. 1991). Taking into consideration the allegations in the Complaint, and the record in JLJ's bankruptcy, Shoemaker and Beumeler have failed to identify any legally protected interest that was allegedly harmed by the alleged acts of the presiding judge, his clerk or even more broadly the "Idaho Bankruptcy Court."

Even if Shoemaker and Beumeler could point a specific error in a ruling that resulted in an injury to either of them individually, the law explicitly recognizes that appeal and reconsideration are the avenues for relief by aggrieved litigants, not individual claims raised against judges in a stand-alone proceeding. As a result, Shoemaker and Beumeler lack standing to assert Complaints 15 and 22. Complaints 15 and 22 shall be dismissed.

### i. Complaints 17 and 18.

Unlike the other complaints addressed above, the allegations set forth in Complaints 17 and 18 do appear to satisfy the minimal pleading requirements necessary to establish constitutional standing. Generally, Complaint 17 focuses on alleged efforts by Zions to collect on two consumer loans of Shoemaker and Beumeler during the pendency of JLJ's bankruptcy case. Complaint 17 similarly references alleged attempts by Zions to bring Shoemaker and Beumeler's personal finances into the JLJ bankruptcy case. According to Shoemaker and Beumeler, this

conduct "absolutely violated Debtor's and Plaintiffs Chapter 12 Co-Debtor Bankruptcy Stay Protections (11 U.S.C. § 1201(a))." Complaint 17 fails to identify which consumer loans were the subject of Zions' allegedly wrongful collection efforts. Regardless of the specifics of these loans, dismissal of complaint 17 is appropriate under Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Complaint 18 is based on the same conduct underlying Complaint 17. However, Complaint 18 focuses on the alleged failure by the Idaho Bankruptcy Debtors Lawyers to protect Shoemaker and Beumeler from the alleged violations of the codebtor stay by Zions.  It fails for the same reasons.

### (i)      Civil Rule 12(b)(6).

Under Civil Rule 12(b)(6), applicable in this proceeding under Rule 7012, dismissal is appropriate where a complaint fails to state a claim upon which relief can be granted. "The court may base its dismissal either 'on a lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System*, *LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In this case, Shoemaker and Beumeler have failed to (and cannot) plead sufficient facts to establish a violation of the codebtor stay. Accordingly, Complaint 17 must be dismissed.

### (ii)     Plaintiffs' failure to state a claim for violation of the codebtor stay under § 1201(a).

The filing of a chapter 12 petition "gives rise to an automatic stay of the commencement or continuation of any action to collect or enforce all or any part of any consumer debt of the debtor from any individual that is liable on such debt with the debtor or that secured such debt." 8 Collier on Bankruptcy ¶ 1201.01 (16th ed. 2021). Although Shoemaker and Beumeler fail to provide any detail to this effect, the loans at issue in complaint 17 can conceivably fall into only one of the following three categories: (1) debts between JLJ and Zions for which Shoemaker and/or Beumeler are also personally liable; (2) debts between Zions and Shoemaker and/or Beumeler for which JLJ is not liable; or (3) debts between JLJ and Zions for which neither Shoemaker nor Beumeler is liable. The codebtor stay under § 1201 does not apply to any of these categories.

Debts between Shoemaker, Beumeler, and Zions that do not involve JLJ in any way (category (2) above) and are obviously outside the purview of § 1201(a), which applies only to consumer debt of the *debtor*. As explained repeatedly, Shoemaker and Beumelers were not debtors in JLJ's bankruptcy proceeding. Accordingly, their personal debts are not of the kind § 1201(a) relates to. Additionally, § 1201(a) has no effect on any debts between JLJ and Zions that were not personally guaranteed by Shoemaker and/or Beumeler (category (3) above). Shoemaker and Beumeler cannot be "codebtors" entitled to the protections of § 1201(a) if they are not personally liable for the repayment of the loans at issue.

Finally, debts between JLJ and Zions for which Shoemaker and Beumeler were personally liable (category (1) above), also fall outside the scope of § 1201(a). As stated, the codebtor stay under § 1201 applies only to "consumer debt[s] of the debtor." "Consumer debt" is defined in the Code as "debt incurred by an individual primarily for a personal, family, or household purpose." § 101(8). Stated more simply, a consumer debt must be: (1) incurred by an individual, and (2) incurred primarily for a personal, family, or household purpose. Shoemaker and Beumeler cannot satisfy the first requirement, as JLJ is not an individual under the Code.

A limited liability company like JLJ is considered a "corporation" under the Code. *In re KRSM Properties*, *LLC*, 318 B.R. 712, 717 (B.A.P. 9th Cir. 2004). Although the Code does not define the term, a corporation is not an "individual." *See* § 101(9)(A)(i) (including in the definition of "corporation" any "association having a power that a private corporation, *but not an individual* or partnership, possesses.") (emphasis added); § 101(41) (defining "person" as including individuals, partnerships, and corporations); *see also Consolidated Rail Corp. v. Gallatin State Bank*, 173 B.R. 146, 147 (N.D. Ill 1992) ("Although the Bankruptcy Code nowhere explicitly defines the word 'individual' it leaves no doubt that a corporation is not an individual."). Courts considering the issue have generally held that because corporations are not "individuals," they cannot incur "consumer debts." *See In re Circle Five, Inc.*, 75 B.R. 686, 688 (Bankr. D. Idaho 1987) ("A corporation is not an individual within the code and cannot incur a consumer debt."); *In re SFW, Inc.*, 83 B.R. 27, 30 (Bankr. S.D. Cal. 1988) ("corporations cannot incur consumer debt."); *In re Terry Properties, LLC*, 569 B.R. 76, 91 (Bankr. W.D. Va. 2017) ("a debtor corporation cannot incur a consumer debt.").

Since JLJ is a corporation under the Code and not an individual, it cannot incur a consumer debt of the kind defined in § 101(8). Therefore, Shoemaker and Beumeler were not entitled to the protections of the codebtor stay under § 1201(a) with respect to any debt between JLJ and Zions. As a result, they cannot allege a violation of § 1201(a) by Zions and Complaint 17 must be dismissed for failure to state a claim under Civil Rule 12(b)(6). Since Complaint 18 derives from Complaint 17, it similarly must be dismissed for failure to state a claim.

### C. Dismissal of the Complaint.

This Court recognizes "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *See Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Ordinarily, the Court is required to grant the plaintiff leave to amend, even if the plaintiff has not requested the opportunity to do so. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246–47 (9th Cir. 1990). This general rule is subject to an important exception, futility. It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile. *Klamath– Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983).

If the defects can be cured by amendments that do not contradict any of the allegations of the original complaint, amendment is not futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Having scrutinized each of the complaints comprising the 98-page Complaint,

while recognizing Shoemaker and Beumeler were already afforded an opportunity to amend their initial complaint on multiple occasions, this Court is convinced that any further amendment would be a futile exercise.  Shoemaker and Beumelers' standing hurdle is insurmountable. The Complaint represents a transparent attempt to seek redress, if not relitigation, of matters that did not involve a legally protected interest of Shoemaker or Beumeler. Almost all these matters were the subject of a final order that were not appealed in a bankruptcy that has been dismissed. Similarly, the defect in Complaints 17 and18 cannot be cured by amendment.

Having concluded that dismissal of the entire Complaint without leave to amend is appropriate, the final matter for the Court to consider is whether such dismissal should be with or without prejudice. Dismissal for lack of subject matter jurisdiction under Civil Rule 12(b)(1), is generally without prejudice. *Kelly v. Fleetwood Enders., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004). Similarly, dismissal under Civil Rule 12(b)(6) is typically without prejudice, with the plaintiff afforded an opportunity to amend. *In re Tracht Gut, LLC*, 503 B.R. 804, 815 (B.A.P. 9th Cir. 2014). However, a court's determination that any further amendment would be futile requires a court to dismiss a complaint with prejudice. *Id.* (citing *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012)). As explained above, granting Plaintiffs leave to amend the Complaint would be a futile exercise. Accordingly, the Complaint must be dismissed with prejudice.

**V.     Conclusion**

The Court determines that there exists no set of circumstances where Plaintiffs' lack of standing or inability to establish a violation of the codebtor stay could be saved by any further amendment to the Complaint. Instead, the Complaint is little more than an attempt by Plaintiffs to erase the entirety of JLJ's bankruptcy case–which was disposed of through no fault of anyone but JLJ itself. The Court declines to fashion this remedy, which finds no support in the law, for Plaintiffs' benefit simply because they have asked that it do so. Instead, it determines that their Complaint must be dismissed with prejudice for the reasons stated above.

DATED:  December 15, 2021

Hon BENJAMIN P. HURSH
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION
U.S. COURTS, DISTRICT OF IDAHO